IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RAYMOND CARMONA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | Civil Action No. 4:20-CV-963-P |
| | § | |
| ERIC D. WILSON, Warden, | § | |
| FMC-Fort Worth, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2241, by Petitioner, Raymond Carmona, against Eric D. Wilson, warden of FMC-Fort Worth, Respondent. After having considered the petition and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. FACTUAL AND PROCEDURAL HISTORY**

In this petition, Petitioner challenges a 2019 disciplinary proceeding conducted at FMC-Fort Worth and the resultant sanctions. Pet. 2, ECF No. 1. Petitioner was charged in Incident Report No. 3300636 with conduct which disrupts or interferes with the orderly running of the institution, most like use of any narcotics, a code 199 violation most like 112. Resp't's App. 11, ECF No. 8. The incident report alleged the following:

> At 9:05 PM on 9/05/2019, inmate CARMONA #39224-177 was found in his cell S06-133 awake but unresponsive to staff. He could not stand or walk so a wheelchair was used to transport him to the clinic for an assessment. This Medical Assessment revealed that this inmate had dilated pupils and did not

>respond to verbal or painful stimulation. He was hallucinating and making illogical statements. Medical staff checked his records to ensure he was not prescribed any medications that would cause this behavior. At 11:15 PM, this inmate submitted to a breathalyzer which read .000. He provided a urine sample . . . which was negative. This inmate was then placed in the Special Housing Unit [(SHU)].

*Id.*

The record reflects that on September 6, 2019, Petitioner received advance notice of the charges and, on September 12, 2019, he was advised of his rights and informed that a disciplinary hearing would be held on the next available date. *Id.* at 11–14. On September 19, 2019, Petitioner attended a disciplinary hearing, after which the disciplinary hearing officer (DHO) found that Petitioner committed the violation. *Id.* at 8–9. During the hearing, Petitioner waived his rights to have staff representation and to call witnesses, admitted to the charge, and declined to make a statement. *Id.* at 8. He had no documentary evidence to present. *Id.* at 9. The DHO based his decision on the "greater weight" of the evidence, which included the incident report; three staff memorandums; a "photo sheet"; the "clinical encounter injury assessment" pertaining to Petitioner; medical staff's confirmation that Petitioner did not have a medical history and/or any prescriptions that would have caused his behavior; and Petitioner's admission to committing the act. *Id.* at 9, 11–12, 15–22. The DHO's sanctions included the loss of 41 days of good-time credit, 30 days of disciplinary segregation, and 90 days' loss of commissary, email, and visitation privileges. *Id.* Petitioner received a copy of the DHO's findings on October 3, 2019. *Id.* at 10.

**II. ISSUES**

Petitioner asserts that his right to due process was violated during the disciplinary proceedings as follows:

(1) There was no investigator who approached Petitioner while he was in the SHU, in violation of "Program Statement 5270.09/541.5(b)(2)";

(2) No staff representative was appointed and Petitioner was not made aware that he could request one "to understand and help through the DHO procedure";

(3) In the DHO report, section (1)(c), it states "that inmate was advised of his rights before the DHO by . . . V. Ivory, Unit Manager on . . . 09/12/2019," however "Ms Ivory did not go to SHU to inform and speak to [Petitioner]" nor did Petitioner waive his right to staff representation as indicated in section II, A of the DHO report, "in violation of 5270.09/541.7(g)";

(4) No "UDC written report was given to [Petitioner] which documents referral to DHO," in violation of "6270.09/541.7(h);

(5) Petitioner "was not given opportunity to request staff representation, thus there was no assistance in scheduling witnesses, obtaining written statements, and otherwise help in preparing evidence for presentation at DHO hearing," in violation of "5270.09/541.8(f)";

(6) The DHO's statement that Petitioner admitted to the charge is false: Petitioner "attests that he answered the actions and test results were affirmative, but he did not admit guilt to a charge or wrongdoing";

(7) There is a "[d]iscrepancy and confusion on Exh which shows the date recieved [sic] stamps of the same case number 994149-A1, Dec. 16 2019, and March 30, 2020";

(8) On appeal, the Central Office lost case number 994149-A1and/or "re-assigned" case number 994149-A2, failed to provide a request for an extension of time to file its response, and provided a late response, in violation of the Administrative Remedy Policy (ARP); and

3

    (9)    In line 10 of the incident report, "the prohibited act should state 1999 most like 111 which correlates to drug[s]."

Pet. 5–9, ECF No. 1. He seeks to have his good-time credit restored and the disciplinary proceeding expunged from his record. *Id.* at 10–11.

### III. DISCUSSION

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). The United States Supreme Court has, however, recognized a set of minimum procedural protections that apply to prison disciplinary proceedings, including the right to (1) advance written notice of the charges against him prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken, and (4) "some evidence" to support the ruling. *Wolff*, 418 U.S. at 563–66; *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985).

Therefore, to the extent Petitioner complains that prison officials failed to properly categorize the violation as a violation "most like 111"; failed to conduct an adequate investigation into the incident prior to the disciplinary hearing; and that the disciplinary proceeding and appeal process violated certain rules, policies, and regulations of the Bureau of Prisons, he fails to state a claim for due process violations. *See Myers v. Klevenhagen,* 97

F.3d 91, 94 (5th Cir. 1996) (providing "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"); *Moles v. Holt,* 221 Fed. App'x 92, 96, 2007 WL 869038, at *3 (3d Cir. Mar. 23, 2007) (providing the "failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"); *Banks v. Director, TDCJ-CID,* No. 1:12-CV-592, 2013 WL 1003423, at *2 (E.D. Tex. Jan. 2, 2013), *R. & R. adopted,* 2013 WL 1003417 (E.D. Tex. Mar. 13, 2013) (providing "there is no federal constitutional right to an administrative appeal from a disciplinary conviction"). Nor does Petitioner show any constitutionally protected right implicated by the alleged inaccuracies in the disciplinary hearing report or present evidence that portions of the DHO hearing report were false.

Instead, the record indicates that Petitioner received all the process he was due under *Wolff*. Though he now claims that he did not waive staff representation, the DHO indicated that he declined the services of a staff representative to assist him at the hearing. Resp't's App. 9, ECF No. 8. In any case, due process does not entitle him to staff representation. "An inmate does not have a constitutionally protected right to representation during prison disciplinary hearings." *Arceneaux v. Pearson,* 449 F. App'x 396, 398 (5th Cir. 2011) (citing *Morgan v. Quarterman,* 570 F.3d 663, 668 (5th Cir. 2009)). "Where an illiterate inmate is involved" or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case,"

5

the United States Supreme Court has held that he "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff,* 418 U.S. at 570. But here, the "pleadings submitted by [Petitioner] do not evince illiteracy, and the issues in his disciplinary case were not complex." *McCoy v. Fox,* 587 F. App'x 802, 804 (5th Cir. 2014).

### III.  CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is **DENIED**. A certificate of appealability is also **DENIED**.

**SO ORDERED** on this 16th day of March, 2021.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE